### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| EMIR GUR-RAVANTAB, EMILY LAMA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF REGENTS OF GEORGETOWN UNIVERSITY,<br><br>Defendant. | Civil Action Nos.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Emir Gur-Ravantab and Emily Lama ("Plaintiffs"), bring this action individually and on behalf of all others similarly situated against Defendant Georgetown University ("Georgetown" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

### NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1. Georgetown entered into a contractual agreement with its students, including the Plaintiffs, in which Plaintiffs would make payments of tuition and fees and Georgetown would provide educational services.

2. The terms of that contract were not formed a single integrated document with all of the detailed covenants and promises in one single document.

3. Plaintiffs' policy documents[1], invoices, and bills that obligated them to pay tuition,

---

[1] *See e.g.*, the 2019-2020 Undergraduate Bulletin stating that, "By the act of registration, class attendance or participation in other activities associated with enrollment at Georgetown, the student accepts financial

fees, and other monies in exchange for educational services, but those documents failed to describe the obligations and covenants as to what Georgetown would provide.

4.    Rather, the covenants and promises required by the parties as part of that University-Student contract – namely those obligated by Georgetown – were detailed and promised over the course of numerous documents and materials that were exchanged through the application, acceptance, enrollment, registration, and payment processes, including policy documents and standardized documents.

5.    Many of those documents are standardized or policy documents like acceptance letters, course catalogs, handbooks, bulletins, the enrollment acknowledgment, and other documents and materials, and those documents conveyed the respective obligations of the parties, including the obligations on Georgetown to provide educational services to students like Plaintiffs.

6.    Students, like Plaintiffs, also reviewed other documents, materials, and representations from Georgetown reflecting the nature of the educational services and relied upon past experiences and past performance to form a reasonable expectation of the services they could receive.

7.    According to those documents and the reasonable expectations of the parties, Plaintiffs paid various fees in exchange for specific services, including:

(a) Student Activities Fee – which is charged to all "Undergraduate degree-seeking students…[for] each semester for which they are enrolled. The proceeds from this fee funds various activities throughout the year, including concerts, lectures, performances, discussion groups, recreational opportunities, and other co-

---

responsibilities for charges assessed to his/her student account. This financial responsibility is not relieved until payment has actually been made for any charges incurred. [table of "Tuition and Other Expenses" omitted]."

curricular programs."[2]

    (b) Yates field House Membership – "Access to Yates Field House is now included in the cost of tuition for any part-time or full-time active, degree-seeking student. Part-time students in a non-degree seeking program/certificate will need to 'opt-in' to the Yates Access Fee by visiting Yates Field House."[3]

    (c) Various Course and program fees including: Laboratory Fees, Language Lab Fees, Materials Fees, MSB Technology Support Fees, NHS Technology Fees, and EFL Laboratory Fees.

8.    These Fees were described in the Undergraduate Bulletin and other similar documents.

9.    Other documents and materials listed these same Fees, including tuition bills and invoices, websites, and other standardized policy materials written and disseminated by the University to convey what students were obligated to pay and what they would receive in exchange for such monies.

10.    According to those documents and the reasonable expectations of the parties, Plaintiffs paid tuition monies to Georgetown in exchange for specific educational services like instruction, credits, access to campus, access to campus facilities, in-person classroom learning, and other services.

11.    Undergraduate students like Plaintiff Gur-Ravantab enrolled at Georgetown under the policy that, "All full-time undergraduate students must live on campus this first and second years, and for a third (junior or senior) year.").

---

[2] https://web.archive.org/web/20191226190901/https://studentaccounts.georgetown.edu/tuition/undergraduate/#tuition

[3] Id.

12.     Undergraduate students like Plaintiff Gur-Ravantab deposited money to enroll at Georgetown and received confirming that, "[Georgetown] look[s] forward to welcoming you to campus this coming August."

13.     Other documents and materials conveyed the same promises of campus-based and/or in-person educational services – often through the repeated use of "campus", "classroom", and/or "community" to convey the same general principle: students would receive campus-based, in-person educational services if they enrolled, maintained good standing, and paid the required tuition and fees.

14.     Georgetown's website outlines many of the policies and procedures regarding tuition and fees, and the in-person nature of such.

15.     For example, Undergraduates must pay the "Student Activities Fee," a "mandatory fee" that "fund[s] various activities throughout the year, including concerts, lectures, performances, discussion groups, recreational opportunities, and other co-curricular programs" at a price of $85.50 per semester, while graduate students are assessed a "Graduate Student Activity Fee" of $17.50 per semester.[4]

16.     Although each and every one of these fees supports campus-based, in-person services that were not available to Plaintiffs after March 6, 2020, Plaintiffs and class members have not been provided a refund of any of these fees.

17.     Prior to beginning the Spring 2020 semester, and prior to paying tuition and fees, Plaintiffs consulted the Course Catalog and enrolled in courses for the Spring 2020 semester.  In consulting the Course Catalog, Plaintiffs understood and believed that every course in which they

---

[4] https://studentaccounts.georgetown.edu/tuition/undergraduate/#sac, https://studentaccounts.georgetown.edu/tuition/graduate/#

enrolled was to be taught in-person and on-campus.

18.     Plaintiffs' understanding and reasonably expectation was based on the course specifying an on-campus location where the course would be taught, as well as that the courses were listed as "Instructional Method:  In Person" on the Course Catalog search function.[5]  Thus, the in-person nature of the courses was part of the benefit of the bargain, and Plaintiffs would not have paid as much, if any, tuition and fees for the Spring 2020 semester at Georgetown had they known that the courses would not, in fact, be taught in-person.

19.     Indeed, Plaintiffs' Spring 2020 semester schedule and syllabi, as exemplified on the Georgetown University student portal, show that each and every class in which he enrolled was to be taught in-person.  One such example is pasted below.



---

[5] https://myaccess.georgetown.edu/pls/bninbp/bwckgens.p_proc_term_date?p_term=202010&p_calling_proc=bwckschd.p_disp_dyn_sched#_ga=2.245433156.1125784132.1597329094-686794316.1593096963



20.    Based on these and other documents and based on prior experience, Plaintiffs had the reasonable expectations that they would receive campus-based, in-person learning when they registered for classes and paid tuition and/or fees

21.    Plaintiffs and Georgetown entered into a contractual agreement where Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.  The terms of the contractual agreement were set forth in publications from Georgetown University, including Georgetown University's Spring Semester 2020 Course Catalog ("Course Catalog"), the marketing materials, and other official university communications.

22.    When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020 at Georgetown including during the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses.

23.    The Course Catalog provided Plaintiffs and Class Members with information

regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which courses would be held.  An exemplar of a class page from the Spring Semester 2020 Course Catalog is pasted below:



24.     Indeed, the Course Catalog specifically allows for students to search for courses to enroll in based on "Instructional Method," which includes an option for "In Person."[7]

---

[6] https://myaccess.georgetown.edu/pls/bninbp/bwckschd.p_get_crse_unsec

[7]

https://myaccess.georgetown.edu/pls/bninbp/bwckgens.p_proc_term_date?p_term=202010&p_calling_proc=bwckschd.p_disp_dyn_sched#_ga=2.245433156.1125784132.1597329094-686794316.1593096963

25.     Other publications from Georgetown reference the in-person nature of the Spring Semester 2020 course offerings, including course specific syllabi and the University's Student Handbook of Academic Policies ("Academic Policies") which detail the policies, procedures, and expectations of Georgetown Law students.[8]

26.     The Academic Policies describe the rules regarding in-person education and the importance of in-person class attendance. *See id.* at 15, Attendance, Examinations, And Written Work; Attendance and Participation: ("Regular and punctual attendance at all class sessions is required.  Student participation is expected in all courses. A student who, even though registered for a course, has not regularly attended, participated, or otherwise met class requirements may be subject to any of the following, at the professor's option: …. The student may be withdrawn; The student may be excluded from attending class sessions; The student may be excluded from sitting for a final examination or submitting a final paper (with the same consequences as a failure to appear for a final examination or submit a final paper); and/or The student may receive a lowered

---

[8] https://georgetown.app.box.com/s/qjr82yzdyo0rdao3xheynozx9h6969rv

9

or failing grade in the course.")

27.     Prior to Plaintiffs' enrollment at Georgetown, the University highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were invaluable to Plaintiffs' educational experiences.

28.     Plaintiffs made payments to the University based on promises made by Georgetown in those documents in lieu of receiving education at other universities or academic institutions, including those that were online only, not campus-based, and were considerably less expensive.

29.     Moreover, the Tuition and Mandatory Fees pages on the Georgetown Website,[9] provide many of the policies and procedures regarding tuition and fees, and the in-person nature of such.  For example, undergraduates and graduate students must each pay a "Student Activities Fee," a "mandatory fee" that "fund[s] various activities throughout the year, including concerts, lectures, performances, discussion groups, recreational opportunities, and other co-curricular programs."[10]

30.     However, during the Spring 2020 semester, Plaintiffs were enrolled, registered for classes, maintained good standing, paid the required tuition and fees, and only received some of the educational services that they contracted for.

31.     For a material portion of the Spring 2020 semester, Plaintiffs did not receive the specific educational services that they contracted for when they paid specific fees. For example:

(a) Plaintiffs did not receive access to live concerts, lectures, performances, discussion groups, recreational opportunities, and other co-curricular programs despite paying the "Student Activities Fee";

---

[9] https://studentaccounts.georgetown.edu/tuition/law/#,
https://studentaccounts.georgetown.edu/tuition/undergraduate/#
[10] https://studentaccounts.georgetown.edu/tuition/undergraduate/#sac

(b) Plaintiffs did not receive access to the Yates Field House despite the membership cost being included within their tuition;

(c) Students that were required to pay Language Technology Fees were not provided access to walk-in labs and computer teaching labs despite paying fees for access to them.

32.     For a material portion of the Spring 2020 semester, Plaintiffs did not receive the specific educational services that they contracted for when they paid tuition, including the campus-based, in-person educational services like:

(a) Access campus;

(b) Access to campus facilities like labs, libraries, study rooms, buildings, lounges, and campus-based services;

(c) Access to in-person classrooms;

(d) Access to in-person teaching;

(e) Access to the in-person Georgetown community; and

(f) Access to the campus-based educational services that Georgetown previously offered and provided.

33.     For a material portion of the Spring 2020 semester, Plaintiffs receive materially different educational services than those they agreed upon, paid for, and contracted for.

34.     While Plaintiffs did receive some educational services (i.e., the online only instruction), they did not receive the educational services they contracted for – namely the campus-based, in-person educational services.

35.     During the Spring 2020 semester, Plaintiffs did not agree to, pay for, or contract for online-only instruction or remote emergency teaching.

36.    Despite Georgetown being unable to provide campus-based and in-person educational services for a material portion of the Spring 2020 semester, Georgetown elected to retain the full amount of tuition and the full amount of fees.

37.    Georgetown's Spring Semester 2020 commenced on or around January 13, 2020, and was scheduled to conclude on or around May 9, 2020.  Plaintiffs and Class Members' payment of tuition and fees were intended to cover in-person education, experiences, and services for the entirety of the Spring Semester 2020.

38.    On or about March 11, 2020, Georgetown, through a published notice, announced that because of the global COVID-19 pandemic, all in-person classes would be suspended, and that online classes would begin on March 16, 2020 (the first day after Spring Break).  The university announced that the rest of Spring 2020 semester coursework would be offered solely online.

39.    Georgetown did not hold in-person classes on or after March 6, 2020.  Classes that continued after March 16, 2020 were only provided in an online format, at times with little or no actual, real-time instruction from professors or instructors.

40.    As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, experiences, access, and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The remote learning options were in no way the equivalent of the in-person education that Plaintiffs and the putative class members contracted and paid for.  As such, Defendant's educational services have diminished in value significantly compared to the in-person education services that Defendant was providing prior to canceling in-person classes.

41.    Georgetown did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020.

42. Nonetheless, Georgetown refuses to refund any tuition or mandatory fees for the Spring Semester 2020.

43. Plaintiffs and the putative class did not enter into an agreement with Georgetown for online education, but rather sought to receive an in-person education from Georgetown. Plaintiffs and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant claims it did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services that have diminished in value or are not being provided at all.

44. Through this lawsuit Plaintiffs seek, individually and on behalf of Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiffs seek a return of these amounts individually and on behalf of the Class as defined below.

## **PARTIES**

45. Plaintiff Gur-Ravantab is a citizen of the United States with a residence in the District of Columbia and was enrolled as an undergraduate student during the Spring 2020 semester. According to his Account Summary and Current Term Transaction for Spring 2020 semester, Plaintiff Gur-Ravantab was obligated to pay $27,720.00 in "Tuition – Undergrad (COL)", $84.00 as a "Student Activities Fee – UG", a $70.00 "Language Technology Fee", $250.00 as "Flex Dollars 100 Meal Plan", and $1,350.00 as a "Block 100 Meal Plan."

46. Plaintiff Gur-Ravantab made financial arrangements and did pay those charges, including through student loans.

13

47.     As a result of the pandemic, Georgetown issued Plaintiff Gur-Ravantab a "Flex Dolalr Refund Credit" of $163.07 and "Meal Plan Credit-COVID19" in the amount of $958.50.

48.     Plaintiff Gur-Ravantab has not received a refund of tuition or fees.

49.     Plaintiff Emily Lama is a citizen of the United States with a residence in the District of Columbia and was enrolled at a graduate student during the Spring 2020 semester. According to her "Student Account – Spring 2020 – Account Activity", she was obligated to pay $4,176.00 as "Tuition" for the semester.

50.     Plaintiff made financial arrangements and did pay those charges.

51.     As a result of the pandemic, Georgetown issued Plaintiff Lama a "COVID-19 CRISIS RESPONSE FUND" credit in the amount of $600.

52.     Plaintiff Lama has not received a refund of tuition or fees.

53.     Plaintiffs have not received a refund for any portion of the Spring Semester 2020 tuition, or for student fees paid, despite that in-person classes have not been held since March 6, 2020 and the campus has been effectively shut down.

54.     During the time classes have switched to online format during the Spring 2020 semester, Plaintiffs did not receive the benefit of in-person instruction, meaningful student presentations, peer collaboration, or equivalent access to university faculty, facilities and services.

55.     These campus-based, in-person resources were available to Plaintiffs while in-person classes were suspended through the end of the Spring Semester.

56.     Defendant Georgetown University is a private research university in Washington, D.C., with its principal place of business at 3700 O Street NW, Washington, D.C. 20057.

57.     Georgetown is a private research university in Washington D.C., with a total enrollment of approximately 19,000 students.  Georgetown offers more than 40 undergraduate

majors, as well as a number of graduate programs, including law and business.

58.     Plaintiffs allege as detailed here, that this matter should proceed as class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at Georgetown, and who, were subject to Defendant's financial decision at the end of the semester to not offer a refund, rebate, credit, or discount as to the tuition and fees.

## JURISDICTION AND VENUE

59.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

60.     This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant is domiciled in this District.

61.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, and because many of the acts and transactions giving rise to this action occurred in this District.

## CLASS ALLEGATIONS

62.     Plaintiffs seek to represent a class defined as all enrolled students who paid tuition and/or fees to Georgetown to take classes during the Spring Semester 2020 and received online-only educational services, and whose tuition and fees have not been refunded (the "Class").

63.     Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals,

servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

64.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

65.     **Numerosity.**  The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

66.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted tuition and fees from Class members in exchange for the promise to provide campus-based, in-person services;

(b)     whether Defendant was obligated under the student-university contract to provide in-person, campus-based educational services;

(c)     whether Class members are entitled to a partial refund for that portion of

the tuition and fees that was contracted for services that Defendant did not

provide;

(d)    whether Defendant has unlawfully converted money from Plaintiffs, the

Class; and

(e)    whether Defendant is liable to Plaintiffs, the Class for unjust enrichment.

67.    **Typicality.**  Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiffs.

68.    **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

69.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single

proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

70.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

### COUNT I
**Breach Of Contract as to Fees**
**(On Behalf Of Plaintiffs and The Class)**

71.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

73.     Plaintiffs and the other Class Members entered into contractual agreements with Defendant, which provided Plaintiffs and other Class Members would pay fees – and in exchange Defendant would provide facilities, activities, services, and resources to students.

74.     Defendant provided documents that specifically list the fees that would be assessed

to students and detailed the nature of these fee charges.

75.    Such charges include:

(a)   Student Activities Fee – which is charged to all "Undergraduate degree-seeking students…[for] each semester for which they are enrolled. The proceeds from this fee funds various activities throughout the year, including concerts, lectures, performances, discussion groups, recreational opportunities, and other co-curricular programs."[11]

(b)  Yates field House Membership – "Access to Yates Field House is now included in the cost of tuition for any part-time or full-time active, degree-seeking student. Part-time students ina  non-degree seeking program/certificate will need to "opt-in" to the Yates Access Fee by visiting Yates Field House."[12]

(c)  Various Course and program fees including: Laboratory Fees, Language Lab Fees, Materials Fees, MSB Technology Support Fees, NHS Technology Fees, and EFL Laboratory Fees.

76.    Plaintiffs and the other Class members have fulfilled their end of the bargain when they paid Defendant's fees for the Spring 2020 semester.

77.    Defendant breached its contract with Plaintiffs and the other Class Members when it moved classes online, cancelled on-campus events and activities, closed campus and stopped providing facilities, activities, services and resources for which fees were paid, and refused to provide any refunds.

78.    In doing so, Defendant has and continues to deprive Plaintiffs and the other Class

---

[11]https://web.archive.org/web/20191226190901/https://studentaccounts.georgetown.edu/tuition/undergraduate/#tuition
[12] Id.

Members from the benefit of their bargains with Defendant associated with those specific fees.

79.     Even if performance is excused, Defendant cannot retain those fees for facilities, activities, services, resources, and meals it did not provide for the remainder of the Spring 2020 Semester.

80.     By retaining all of the subject fees while not providing facilities, activities, services, and resources, throughout the Spring 2020 semester, Defendant has breached the implied duty of good faith and fair dealing embedded in its contractual agreements with Plaintiffs and other Class Members.

81.     Defendant retained monies paid by and which belong to Plaintiffs and the other Class Members, without providing them the benefit of their bargain.

82.     Plaintiffs and the other Class Members have been damages as a direct and proximate result of Defendant's breach.

83.     Plaintiffs and the other Class Members are entitled to damages, including but not limited to fee refunds for services that were completely unavailable and partial refunds for services that were partially available.

84.     In the alternative, Plaintiffs and the other Class Members are entitled to an equitable remedy-disgorgement of the pro-rated, unused amounts of fees that Defendant has already charged, and that Plaintiffs and the other Class Members have paid.

85.     As a result of Defendant's breaches, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## COUNT II
### Breach Of Contract as to Tuition
### (On Behalf Of Plaintiffs and The Class)

86.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

87.    Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

88.    The covenants and promises required by the parties as part of that University-Student contract – namely those obligated by Georgetown – were detailed and promised over the course of numerous documents and materials that were exchanged through the application, acceptance, enrollment, registration, and payment processes, including policy documents and standardized documents.

89.    Many of those documents are standardized or policy documents like acceptance letters, course catalogs, handbooks, bulletins, the enrollment acknowledgment, and other documents and materials, and those documents conveyed the respective obligations of the parties, including the obligations on Georgetown to provide educational services to students like Plaintiffs.

90.    The terms of the parties' express contractual relationship as to tuition are set forth in publications from Georgetown University, including the Spring Semester 2020 Course Catalog.

91.    When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying tuition and fees for those selected courses.

92.    Defendant's Course Catalog constitutes an offer to enter a contractual agreement.

21

93.     The Course Catalog provided Plaintiffs and Class Members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which the courses would be held.

94.     Indeed, the Course Catalog search function allowed students to search and register for classes based on "Instructional Method:  In Person."

95.     Other publications from Georgetown reference the in-person nature of the Spring Semester 2020 course offerings, including course specific syllabi and the University's Student Handbook of Academic Policies ("Academic Policies") which detail the policies, procedures, and expectations of Georgetown Law students.   The Academic Policies describe the rules regarding in-person education and the importance of in-person class attendance.

96.     Moreover, Georgetown's website outlines many of the policies and procedures regarding tuition and fees, and the in-person nature of such.

97.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.

98.     Plaintiffs and the Class members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.

99.     Tuition and fees for Spring Semester 2020 was intended to cover in-person classroom educational services from January through May 2020.

100.    In exchange for tuition monies paid, Class members were entitled to in-person educational facilities and services through the end of the Spring Semester.  But those services have not been provided and/or have diminished in value.

101.    Defendant failed to provide the contracted for services and has otherwise not

performed under the contract as set forth above.  Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

102.    Plaintiffs and members of the Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

103.    As a direct and proximate result of Defendant's breach, Plaintiffs, the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided or diminished in value since Georgetown shut down.

104.    Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

**COUNT III**
**Breach of Implied Contract**
**(On Behalf of The Class)**

105.    Plaintiffs hereby incorporate by reference the allegation contained in all preceding paragraphs of this complaint.

106.    Plaintiff pleads this Count in the alternative to Counts I & II.

107.    Plaintiffs and the Class Members entered into an implied contract as to tuition and fees, wherein Plaintiff paid tuition and fees, and Defendants agreed to provide in-person and on-

campus educational services.

108.    There is no single integrated document that reflects all of Georgetown's covenants and promises as part of the student-university agreement.

109.    The covenants and promises required by the parties as part of that University-Student contract – namely those obligated by Georgetown – were detailed and conveyed over the course of numerous documents and materials that were exchanged through the application, acceptance, enrollment, registration, and payment processes, including policy documents and standardized documents.

110.    Many of those documents are standardized or policy documents like acceptance letters, course catalogs, handbooks, bulletins, the enrollment acknowledgment, and other documents and materials, and those documents conveyed the respective obligations of the parties, including the obligations on Georgetown to provide educational services to students like Plaintiffs.

111.    Students, like Plaintiffs, also reviewed other documents, materials, and representations from Georgetown reflecting the nature of the educational services and relied upon past experiences and past performance to form a reasonable expectation of the services they could receive.

112.    For example, when Plaintiff Gur-Ravantab made his tuition and fees deposition and completed his Enrollment Agreement Form in or around April 25, 2016, Georgetown reiterated its prior promise acknowledging he would "matriculate at Georgetown University" and that the University staff looked forward to "welcoming you to campus this coming August."

113.    Both of those clauses conveyed that Plaintiff would be allowed to be physically present on campus and at Georgetown's physical location.

114.    In fact, the 2019-2020 Undergraduate Bulletin contains 212 references to "campus"

24

thereby reinforcing the foundational understanding that Georgetown was a campus-based educational institution with in-person classes.

115.    The same Undergraduate Bulletin utilizes "classroom" on 22 separate occasions and uses the word "community" on 106 occasions.

116.    Visual images and representations of student life at Georgetown conveyed these same foundational understandings, including images of campus, images of students working together, images of professors working with students, images of campus buildings, images of campus labs, images of campus-based technologies, and other similar visuals.

117.    Similarly, the Code of Student Conduct at Georgetown[13] contains 86 references to "campus" and 42 references to "community", thereby again implying that Defendant's services were campus-based and centered around its physical in-person location.

118.    In fact, undergraduate students like Plaintiff Gur-Ravantab at Georgetown are obligated to live on campus for three out of four years of undergraduate studies to create that community and allow Georgetown to provide those services in-person.

119.    In its Ethos Statement, Georgetown conveys "Choosing to come to Georgetown University means joining a distinctive community." The statement goes further to convey, "[a] commitment to the highest standards of honesty and personal integrity both inside and outside the classroom."

120.    These standardized documents and policies regularly reflected that Georgetown would provide access to "campus", its "classrooms", "campus" facilities, "campus services", and other in-person, campus-based educational services, opportunities, and experiences.

---

[13] The 2019-2020 version of this document is unavailable at https://web.archive.org/web/20200915034135/https://georgetown.app.box.com/s/bibfmpo93061uxmwir29; so Plaintiffs reference the 2021-22 version as it is available at https://studentconduct.georgetown.edu/code-of-student-conduct/

121.    Students like Plaintiff that paid the substantial tuition and fee amounts reasonably expected to receive campus, community, and in-person classroom learning when they enrolled at Georgetown and registered for classes in the Spring 2020 semester.

122.    When students like Plaintiff paid tuition and fees they reasonably expected to receive access to campus, its services, its facilities, and the in-person educational services like instruction and class.

123.    Documents like those referenced in this complaint reiterate the use of campus, community, and classroom to convey the same implicit concept: Georgetown offers its educational services in-person, on-campus, and face-to-face with other students.

124.    For example, Georgetown marketed information like the following:

## Academic Life

We live at the intersection of teaching and doing, where learning is more than the transmission of knowledge, it is an act of collaboration and practice. Under the mentorship of our distinguished faculty, you'll go beyond the information to not just learn about your field, but also to learn your field's way of thinking. Through lectures, small group projects, independent studies, office hours, internships and more, you'll leave Georgetown with the intellectual skills of perception, analysis, interpretation and expression.

### A premier legal education with limitless opportunities in the nation's capital

Georgetown Law combines a premier legal education with limitless opportunities for hands-on experience. You will learn from a faculty of renowned scholars and leading practitioners across a wide variety of fields, including international, tax, environmental, and health law. Your classwork will prepare you for the experiential learning that truly sets Georgetown apart — in clinics and externships that allow you to make an impact, while building your resume in the city where laws are made, Washington, D.C.

As one of the largest U.S. law schools, with more than 120 full-time professors and an extensive roster of accomplished adjunct professors from across Washington's rich legal landscape, Georgetown Law offers the most comprehensive legal curriculum in the nation. We have all of the resources you need to work toward the career that you imagine, while providing a personalized education. Every staff member and service on our Capitol Hill campus is dedicated to helping our law students excel in the classroom and in their careers.

26

125.    Under the implied contract, Plaintiffs and the Class Members registered for on-campus, in-person courses and access to campus and its facilities.

126.    It was the reasonable expectations of Plaintiffs and Class Members that Defendants would provide them with on-campus, as opposed to online, classes and instruction and use of Defendant's facilities and services in accordance with Defendant's usual and customary practice of providing on-campus courses.

127.    Georgetown has provided access to campus and classroom learning for over 200 years to its students, except for those enrolled during the Spring 2020 semester.

128.    Plaintiffs and Class Members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

129.    Plaintiffs and the Class Members have fulfilled all expectations by registering and pay for on-campus course and access to on-campus facilities and services.

130.    Plaintiffs and the Class Members have paid Defendants for all Spring 2020 term financial assessments.

131.    However, Defendants breached the implied contract, failed to provide those on-campus classes, services, experiences, and access, and have not otherwise performed as required by the implied-in-fact contract between Plaintiff and the Class Members and Defendant. Defendant moved all classes to online classes, restricted or eliminated Class Members' ability to access university facilities, and/or evicted Plaintiffs and the Class Members from campus housing. In doing so, Defendant have deprived and continue to deprive Plaintiffs and the Class Members from the benefit of their bargains with Defendants.

132.    Plaintiffs and the Class Members have been damaged as a direct and proximate

result of Defendant's Breach. The online classes provided by Defendant are objectively different from, worse than, and less valuable than the on-campus classes for which the parties entered into an implied-in-fact contract.

133.     Plaintiffs and the Class Members are entitled to damages, including but not limited to tuition refunds and fee refunds.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of The Class)**

134.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

135.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant, in the alternative to Counts I, II, & III.

136.     "Unjust enrichment occurs when (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005).

137.     Plaintiffs and members of the Class conferred a benefit in the form of tuition and fees, Defendant retained that benefit unjustly without providing the promises educational experiences and services, therefore Defendant's retention of such services is manifestly unjust.

138.     Plaintiffs and members of the Class conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises.  Tuition and fees for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition and fee monies paid, Plaintiffs and Class members were entitled to in-person educational facilities and services through the end

of the Spring Semester.

139.    Defendant voluntarily accepted and retained this benefit by accepting payment.

140.    Defendant has retained this benefit, even though Defendant failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.

141.    Plaintiff and Class Members conferred financial benefits and paid substantial tuition and fees to Defendants for educational and related services for the Spring Semester 2020.

142.    Plaintiffs believed these tuition and fee payments were intended to cover in person education throughout the entire Spring Semester 2020.

143.    Defendant accepted the obligation to provide such services, experiences, and opportunities when it accepted payment.

144.    Instead, the Universities provided only the benefits and education similar to those provided to online program students, who typically pay a significantly lower rate for such benefits and education.

145.    Defendant retained the full in-person on campus payments, despite failing to provide the bargained for educational experiences and services which the tuition and fees were collected to cover. Defendant should be required to return a pro-rated share of any Spring Semester 2020 tuition and fees since the Universities shut down on or around March 18, 2020.

146.    Defendant has been unjustly enriched by Plaintiffs' and the Class' payments of tuition and Mandatory Fees.

147.    Undoubtedly, the costs incurred for having an online only program is significantly lower in overhead as compared to on campus education and services. This is evinced by the typically lower tuition and Mandatory Fees charged by the Universities for online only programs.

29

148.    The Universities already had the capabilities to provide online education through its use of its established platform, and therefore, should not have incurred any additional cost in the transition.

149.    Under principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

150.    Defendant's services have not been provided and/or have diminished in value. Accordingly, Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided or diminished in value since Georgetown shut down.

151.    It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

**COUNT V**
**Conversion**
**(On Behalf Of The Class)**

152.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

153.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

154.    Plaintiffs and members of the Class have a possessory interest in the tuition and fees paid for the right to the in-person educational services they were supposed to be provided in exchange for their Spring Semester 2020 tuition and fee payments to Defendant.

155.    Plaintiffs and the Class Members possessory interest is a specificly identifiable fund of money, namely their tuition and fee payments.[14]

---

[14] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"),

156.    Defendant intentionally interfered with the rights of Plaintiffs and the Class when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay.

157.    Plaintiffs and members of the Class demand the return of the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided or diminished in value since Georgetown shut down.

158.    Defendant's retention of the fees paid by Plaintiffs and members of the Class without providing the educational services for which they paid, deprived Plaintiffs and Class members of the benefits for which the tuition and fees paid.

159.    This interference with the services for which Plaintiffs and members of the Class paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that will not be provided.

160.    Plaintiffs and Class members are entitled to the return of pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided or diminished in value since Georgetown shut down.

## <u>COUNT VI</u>
### Unlawful and Deceptive Trade Practices In Violation of the CPPA
### (On Behalf Of The Class)

161.    Plaintiffs hereby incorporate by reference the allegations contained in all the preceding paragraphs of the complaint.

---

Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training.  *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.).  The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student.  *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996).  Thus, it is beyond dispute that any college or College receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student.  This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those funds can be properly sustained.  Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

162.    Plaintiffs bring this claim individually and on behalf of the other members of the class and the general public of the District of Columbia, pursuant to D.C. Code § 28-3905(k).

163.    Defendant's provision online education, paid for by Plaintiffs and the Class Members, contradicted representation made about their educational services, including that Plaintiffs and the Class Members would receive in-person educational services, experiences, and opportunities, constituting an unfair and deceptive trade practice pursuant to D.C. Code § 28-3904 in that Defendant:

(a)  Represented that goods  or services have characteristics, use, and benefits that they do not have;

(b) Represented that its services are of a particular standard, quality, and style when, in fact, they are of another;

(c) Misrepresented as to a material fact that has a tendency to mislead;

(d) Failed to state a material fact that tended to mislead;

(e)  Used innuendo or ambiguity as to a material fact, which has a tendency to mislead;

(f) Made unconscionable terms or provisions of a sale as demonstrated by, among other factors, the gross disparity between the price of the services and the value of the services measured by the price at which similar services are readily obtainable in transactions by like buyers;

(g) Otherwise misleads.

164.    The above mentioned material misrepresentations and omissions affect the general public's ability to comparison shop for higher education programs by materially misleading about the contents and quality of the educational services, experiences, and opportunities offered at Georgetown University.

165.    Defendant's cancellation of in-person education and complete transition to online-only education, was in direct contradiction to the representations made in Defendant's marketing, advertisements, and other public representations. Defendant's misrepresentations and omissions regarding the availability of in-person educational services is an unfair and deceptive trade practice pursuant to D.C. Code § 28-3904.

166.    Defendant now takes the position that it never promised an in-person on-campus educational experience, nor access to programs, services, and facilities.

167.    Defendant's misrepresentations and omissions regarding the nature of its educational services constitute an unfair trade practice. This is so because Defendant's marketing (1) offends public policy and (2) is immoral, unethical, oppressive, and unscrupulous, based on Defendant's current position that is did not promise anything represented in its marketing materials and in fact promotes and promises.

168.    Defendant's misrepresentations and omissions are further unfair in that they resulted in economic harm of a nature that could not have been reasonably avoided by consumers such as Plaintiffs and the Class Members.

169.    As a result of these material misrepresentations, Plaintiffs suffered financial losses in that they would not have paid the tuition and fees for the Spring 2020 semester to Defendant or would have paid a much lower amount.

170.    D.C. Code § 28-3901(c) establishes an enforcement right to truthful information form merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

171.    As a result of Defendant's unfair and deceptive trade practices detailed herein, Plaintiffs and consumers in the District of Columbia were deprived of truthful information

regarding Georgetown University's educational services, experiences, access, programs, and opportunities offered.

172.    Plaintiffs and the Class Members seek actual damages, statutory damages, punitive damages, injunctive relief, and reasonable attorney's fees for themselves and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For injunctive relief as pleaded or as the Court may deem proper; and

(g)    For an order awarding Plaintiffs and the Class reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  April 13, 2022                      Respectfully submitted,

                                  By:     */s/ Jonathan Nace*
                                          Jonathan Nace
                                          NIDEL & NACE PLLC

One Church Street, Suite 802
Rockville, MD 20850
202-780-5153
jon@nidellaw.com

Jeffrey K. Brown (*Pro hac vice* forthcoming)
Michael A. Tompkins (*Pro hac vice* forthcoming)
Anthony M. Alesandro (*Pro hac vice* forthcoming)
Brett R. Cohen (Pro hac vice forthcoming)
LEEDS BROWN LAW, P.C.
1 Old Country Road, Suite 347
Carle Place, NY 11514
516.873.9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

Perry L. Segal (*Pro Hac Vice forthcoming*)
**Charon Law**
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065-1422
(650) 542-7935
perry.segal@charonlaw.com

*Plaintiffs' Counsel*