UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EMIR GUR-RAVANTAB,** individually and on behalf of all others similarly situated, *et al.*,

Plaintiffs,

v.

**GEORGETOWN UNIVERSITY**,

Defendant.

Case No. 1:22-cv-01038 (TNM)

**MEMORANDUM ORDER**

Emir Gur-Ravantab is a graduate of Georgetown University, Class of 2020. During the March of his final semester, the COVID-19 pandemic changed everything. Like many other schools, Georgetown moved to fully virtual instruction for the rest of the term. But Gur-Ravantab argues that this breached his contract with Georgetown. He claims he paid a set tuition for a set form of instruction: in-person, face-to-face teaching.

He now sues Georgetown for the difference in value between the education he paid for and the one he received. And he also asks to certify a class of similarly situated Plaintiffs. Gur-Ravantab's Motion for Class Certification is now ripe. But he is not an adequate representative of the class he proposes to certify. Nor is he even a member of it. So the Court denies his motion. Gur-Ravantab may continue his suit, but only on his own behalf.

**I.**

Gur-Ravantab is a former student of Georgetown University, First Am. Compl. (FAC) ¶ 44, ECF No. 12, which he attended from 2016 through 2020, Pl.'s Student Acct. Stmt., ECF No. 43-8. Georgetown provided him various documents before his enrollment, and he alleges that these formed a contract between himself and Georgetown. Under that contract, he paid

tuition in exchange for a guarantee of "in-person classroom learning[] and other services." FAC ¶ 10. But, he argues, Georgetown did not fulfill its end of the bargain.

In March 2020, the COVID-19 pandemic swept the nation. In response, Georgetown announced that it was transitioning to remote instruction for the rest of the Spring 2020 semester. FAC ¶ 37. Gur-Ravantab alleges that there is a material difference in value between in-person and remote instruction. Mot. for Class Cert. at 16–18, ECF No. 40-9. And despite having transitioned to remote instruction, Georgetown has never paid him the difference. FAC ¶ 41. Gur-Ravantab therefore sues for compensatory and punitive damages, along with restitution, on claims that Georgetown breached both an express and an implied contract, *id.* ¶¶ 70–113, and that it was unjustly enriched by its conduct, *id.* ¶¶ 114–31.

But Gur-Ravantab does not sue only on his own behalf. He has also moved to certify a class comprising "[a]ll undergraduate students enrolled in classes at Georgetown University during the Spring 2020 semester who paid tuition and Mandatory Fees." Mot. for Class Cert. at 1. That class would, as Gur-Ravantab tells it, cover roughly 7,300 other current and former Georgetown students. *Id.* at 6. Gur-Ravantab argues that, like him, each of the other class members formed a contract with Georgetown upon enrollment and that each of them suffered an identical breach. *See id.* at 7–8.

## II.

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment . . . in a litigation in which he is not designated as a party." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). That rule exists to protect individuals' due process rights. *Id.* at 41. But that "principle of general application" has certain important exceptions, such as the "class or representative suit," *i.e.*, the class action. *Id.* (internal quotation marks omitted).

Even in a class action, though, the due process rights of absent plaintiffs must be protected.  So, to ensure that the Due Process Clause is enforced even during a class action, the Supreme Court issued Federal Rule of Civil Procedure 23.  That rule contains certain requirements for all class actions, *see* Fed. R. Civ. P. 23(a), which help ensure that the absent class members are protected and that no one has his rights trammeled on by a stranger suing on his behalf.

Rule 23(a)'s requirements are as simple as they are essential.  The first two requirements go to the class itself:  *First*, the class must be big—specifically, so big "that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  If it is reasonably feasible for the whole class to directly participate in the lawsuit, they should do so.  Active involvement is preferred to sitting on the sidelines.  And *second*, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  In other words, there needs to be a reason to proceed as a class action, some kind of common question that a court can solve for all the parties at once.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The latter two requirements then go to the class representative:  *Third*, whoever seeks to represent the class needs to have "claims or defenses" that are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  There needs to be a reason to believe that the plaintiff's claims are "so interrelated" with those of the class that the plaintiff is a good stand-in for the class members in their absence.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  And *last*, the class representative must be able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  He cannot, for example, have a conflict of interest that pits him against other class members, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), and his attorneys must be competent enough to handle the tough demands of a

class action. *Id*. at 626 n.20. These requirements are known as "numerosity," "commonality," "typicality," and "adequacy," respectively.

Courts have also recognized another implied requirement that undergirds the Rule 23(a) requirements. The Supreme Court has "repeatedly held" that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation marks omitted). It has, however, been opaque about where that rule comes from. On various occasions, it has identified no fewer than five different sources for that rule. *E.g.*, *McCabe v. Atchison, Topeka, & Santa Fe Ry. Co.*, 235 U.S. 151, 162 (1914) (general principles of equity); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (Article III standing); *Kremens v. Bartley*, 431 U.S. 119, 131 n.12 (1977) (Rule 23(a), generally); *Falcon*, 457 U.S. at 156–57 (typicality, in particular); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (adequacy, in particular). But the Court need not untangle that mare's nest. No matter if it comes from one, two, or all of the above, the rule is clear: A plaintiff *must* be a member of the class he seeks to represent. For today's purposes, the Court treats it as a separate, standalone rule. The Court will therefore address each of the Rule 23(a) requirements on their own, and only then assess the class membership question.

Once a plaintiff and his proposed class satisfy those requirements, they move on to Rule 23(b). Rule 23(b) describes the three types of class actions that courts can hear, and the plaintiff must show that his proposed class falls in one of these buckets. These ask whether (1) multiple lawsuits would present a risk of mutually incompatible judgments, Fed. R. Civ. P. 23(b)(1); (2) the alleged misconduct is so widespread and uniform that a single injunction would solve the problem for all class members, Fed. R. Civ. P. 23(b)(2); or (3) the common issues are so

dominant over the individual ones that a class action is the most sensible way to proceed, Fed. R. Civ. P. 23(b)(3).

Every class action must satisfy all four Rule 23(a) requirements and at least one Rule 23(b) requirement. Here, though, Plaintiff stumbles before reaching Rule 23(b). He is both an inadequate representative of the proposed class, *and* a non-member. So the Court denies class certification.

### III.

Gur-Ravantab has proposed certifying a class of "[a]ll undergraduate students enrolled in classes at Georgetown University during the Spring 2020 semester who paid tuition and Mandatory Fees." Mot. for Class Cert. at 1. To satisfy Rule 23(a), he needs to show that his proposed class meets each of the four requirements: numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Although it satisfies the first three, it founders on the last. More, he fails to show that he is a member of his proposed class.

No one seriously contends that numerosity is lacking here. Over 7,300 students were registered at Georgetown during the Spring 2020 semester. Georgetown Univ. Off. Enrollment Stats.—Spring 2020 Pt. 1 at 4, ECF No. 40-7. Although the bounds of the numerosity requirement are not well defined, *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), courts have generally found it satisfied where the proposed class contains at least 40 members. *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015). Even if some of the 7,300 students are not class members—because they did not "enroll" in a technical sense, because they did not pay either tuition or fees, or because of some other reason—it is undoubtedly true that more than 40 of the 7,300 registered students fit the class definition. The Court therefore finds that Gur-Ravantab's proposed class satisfies the

numerosity requirement.

Commonality is also satisfied. The essence of the commonality requirement is that the claims of the class "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal-Mart Stores*, 564 U.S. at 350. In other words, all claims must share some "common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Here, common contentions abound. For example, whether the class members and Georgetown formed a contract, one term of which was the provision of in-person services. Mot. for Class Cert. at 7. And, assuming such a contract exists, whether the transition to remote instruction breached it. *Id*. Or whether Georgetown has a viable impossibility defense based on the District of Columbia's public health mandates. Opp'n to Mot. for Class Cert. (Class Cert. Opp'n) at 31, ECF No. 43. Each of these issues is capable of classwide resolution and its determination would address the core of Gur-Ravantab's theory of liability.

Georgetown contends that commonality is not satisfied, but its argument is difficult to comprehend. It argues, for instance, that the Court would need to individually determine the terms of each class member's contract with Georgetown because different class members may have read different documents or understood them in different ways. Class Cert. Opp'n at 20–25. But that does not affect anything.

As Gur-Ravantab rightly points out, each class member received the same contract-forming documents. Reply in Supp. of Mot. for Class Cert. (Class Cert. Reply) at 10, ECF No. 49. And it is elementary that the terms of a contract are defined by the *objective* meaning of the words of the contractual instrument. *Aziken v. District of Columbia*, 70 A.3d 213, 218–19 (D.C. 2013). So each class member would have formed an identical contract, because each was

6

presented with identical terms. It is wholly immaterial what a student may have *subjectively* understood the documents to mean, or even whether he read them at all. *Saylor v. Handley Motor Co.*, 169 A.2d 683, 685 (D.C. 1961) ("[O]ne is obligated by his contract, though signed without knowledge of its terms"). That subjective intent is irrelevant. *Hart v. Vt. Inv. Ltd. P'ship*, 667 A.2d 578, 582–83 (D.C. 1995).[1]

Next, Gur-Ravantab's claims are likely typical of the class. The typicality analysis is concerned with the legal claims and defenses of the class representative, not factual variations between him and the absent class members. *See Wagner v. Taylor*, 836 F.2d 578, 590–91 (D.C. Cir. 1987). So the Court does not ask whether his claims are ultimately meritorious or whether he would recover the same amount as the absent members. *See id.* Instead, the Court merely asks whether the named Plaintiff shares the legal claims of the other members. *See id.*

And here, he does. Gur-Ravantab raises essentially the same legal claim as the members of the proposed class. Like them, he claims he suffered a breach of contract and is owed money. He points to the same contract-forming documents and the same allegedly breaching conduct. Although he may stand in a different factual position than many absent Plaintiffs, this does not defeat typicality. *Wagner*, 836 F.2d at 591.

But Gur-Ravantab fails on adequacy. He does not share the same interests as the other class members and, indeed, has a potential conflict of interest with them. He is therefore not an adequate class representative. The problem here is twofold. First, Gur-Ravantab has a potential conflict of interest in that his mother is a Georgetown employee. And second, because Gur-

---

[1] This reasoning applies equally to Gur-Ravantab's express and implied contract claims. Because Gur-Ravantab alleges that the implied contract arose from the common expectations established through the enrollment documents, *see* FAC ¶¶ 88–92; Mot. for Class Cert. at 12, its source and content are the same as his alleged express contract.

Ravantab did not personally pay tuition or any mandatory fees, he lacks the kind of concrete stake in the outcome of this litigation necessary to be the vigorous advocate the class is entitled to. Both these defects defeat certification.

Start with conflicts of interest. One core purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. Here, one such conflict is present: Gur-Ravantab's mother is a Turkish language instructor at Georgetown, Dep. of Emir Gur-Ravantab at 12:14–17, 13:6–14, ECF No. 43-4, meaning that he has a close familial relationship to a person who may be harmed by a judgment against Georgetown. What is more, Gur-Ravantab testified in his deposition that his parents, including his mother, exert a "pretty major" influence over his decisions, *id*. at 23:9–13, further indicating that his judgment may not be sufficiently independent of Georgetown's interests for him to stand as a class representative here.

To be clear, that is not to impugn Gur-Ravantab's judgment. But Rule 23 requires that class representatives be able to engage in arm's-length dealings with the opposing side, and Gur-Ravantab does not meet that high standard. Perhaps this conflict would not be enough, standing on its own, to defeat adequacy. But it does not stand on its own.

Gur-Ravantab also does not share the same interest in this case as the other class members. Gur-Ravantab sues for a refund of the difference in value between the education he paid for and the one he got. Mot. for Class Cert. at 15–20. But, as it turns out, he did not pay for an education at all. The entirety of Gur-Ravantab's tuition and fees was covered by scholarships and grants for which he had no repayment obligation.

Consider Gur-Ravantab's student account. It shows that he owed Georgetown $27,720 in tuition, $154 in fees, and $1,600 in meal costs for the Spring 2020 semester. Pl.'s Student Acct.

Stmt. at 1. That comes out to a total of $29,474 that Georgetown was due. But Georgetown also gave him some refunds. As compensation for the transition to remote learning, Gur-Ravantab got a "Flex Dollar Refund Credit," worth $163.07, and a "Meal Plan Credit – COVID19," worth $958.50. *Id*. So, factoring in those credits, his total payment obligation to Georgetown was $28,352.43.

Now consider what was paid in. Gur-Ravantab had two scholarships, one for $14,481.50 and one for $12,428.50. Pl.'s Student Acct. Stmt. at 1. He also had a D.C. Tuition Assistance Grant, worth $1,250, and a CARES Act Grant—federal COVID relief—worth $2,600. *Id*. Just off the bat, that is $30,760 in payments from third parties, for which Gur-Ravantab had no repayment obligation. But that means that Gur-Ravantab did not pay Georgetown a dime—he owed the school $28,352.43 and others committed to pay it $30,760 on his behalf.

Gur-Ravantab claims that all this is wrong and that he actually paid $34,602.57 to Georgetown for the Spring 2020 semester. Class Cert. Reply at 16. If that is true, then he would have paid Georgetown more than his scholarships and grants covered, and he might have a concrete stake in the outcome of this litigation. Georgetown, he argues, is only able to claim that his scholarships and grants covered the full cost of attendance through "confusing math and unsupported calculations." *Id*. Not so.

Gur-Ravantab points to two line items on his student account to justify his claim that he personally paid Georgetown. Both fail to avail. First, he notes, his student account shows a Federal Direct Subsidized Loan in the amount of $2,721. Pl.'s Student Acct. Stmt. at 1. That makes sense. After all, at the start of the semester, he would not have known that his total cost of attendance would be reduced by $1,121.57 through the refunds or that he would receive an extra $2,600 in federal grants. But once those contributions were made, the student loan became

moot. Its value was more than offset by those credits, so Gur-Ravantab was not actually out any money. The loan is therefore relevant only if his cost of attendance was so high that the no-repayment contributions did not fully cover it. But it was not.[2]

Second, Gur-Ravantab points to an item titled "ACH REFUND," which lists a value of $5,128.57 in the "Charges" column. Pl.'s Student Acct. Stmt. at 1. This, he argues, means that his true cost of attendance was $34,602.57, which would mean that he *did* pay money above and beyond the scholarships and grants, Class Cert. Reply at 16, and that he has a personal stake in the outcome of the litigation.

But the "ACH REFUND" is, as the name suggests, a *refund*. *See* Collected Tuition Reduction Announcements at 38, ECF No. 41-22. As Gur-Ravantab's own evidence indicates, this entry shows that "a refund . . . was successfully made to [him]." *Id*. The "ACH REFUND" charge was *not* a payment that Gur-Ravantab was due to make but rather the payment of the remaining balance of his student account *out* of the account and *in*to Gur-Ravantab's bank. Hence why it was made at the very end of the semester and hence why it resulted in the values of the charges and credits being perfectly equalized. The reason that the item shows up in the "Charges" column is because it operates as a charge *to the Georgetown student account*, removing money from that account and transferring it elsewhere. Gur-Ravantab's mistake is in understanding the "ACH REFUND" as a charge *to him* rather than *to his account*.

---

[2] The parties make great hay out of Georgetown's policies about the order in which it applies credits to cover charges. *See*, *e.g.*, Class Cert. Reply at 16. But that is neither here nor there. Because there is no repayment obligation for either the scholarships or the grants, it makes no difference which of the two is applied first. At most, it matters whether the no-repayment credits were applied before Gur-Ravantab's student loan. But even then, the value of the loan would be more than offset by the end-of-semester refund from the surplus of the no-repayment credits, so Gur-Ravantab would have been able to settle his tab with his loan servicer at no personal cost. Thus, because money is fungible, the order in which the credits are applied does not matter.

This means that Gur-Ravantab did not spend any money on Spring 2020 charges for Georgetown. Indeed, he got more money out of Georgetown that semester than he put in. Pl.'s Student Acct. Stmt. at 1. So, even if he wins on the merits, he will likely have no compensatory damages to claim. And without compensatory damages, he cannot claim punitive damages either. *Maxwell v. Gallagher*, 709 A.2d 100, 104 (D.C. 1998) (". . . without proof of at least nominal *actual* damages, punitive damages may not be awarded.").

Rule 23(a) requires a class representative to have "the incentive to represent the claims of the class vigorously." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). But Gur-Ravantab has no interest in the outcome of this case except the personal satisfaction of having beaten Georgetown. And that is not enough. *See In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982) (identifying "an absence of antagonism" as one factor defeating adequacy). Thus, because Gur-Ravantab cannot obtain any meaningful relief from this case, he lacks "the incentive to represent the claims of the class vigorously." *Hassine*, 846 F.2d at 179. So he is not an adequate class representative.

And this problem runs even deeper. Recall that Gur-Ravantab proposed a class of "undergraduate students . . . who paid tuition and Mandatory Fees." Mot. for Class Cert. at 1. It is now clear that Gur-Ravantab did not, in fact, "pa[y] tuition and Mandatory Fees." Every single expense that may be classified as either "tuition" or a "Mandatory Fee[]" (even liberally construing that term to encompass housing and meal costs) was paid for by someone else. And Gur-Ravantab owed no one any money as a result. So he quite simply is not a member of the proposed class.

But if Gur-Ravantab is not a member of the proposed class, then he cannot represent it. *Falcon*, 457 U.S. at 156. And there is no other suitable named Plaintiff. Although this suit

features a second named Plaintiff, Emily Lama, she is not a member of the proposed class either. Lama was "enrolled a[s] a *graduate* student during the Spring 2020 semester," FAC ¶ 48 (emphasis added), so she does not fit the class definition. Since there is no named Plaintiff available who can represent the class, the Court must deny Plaintiff's motion.

### IV.

For all these reasons, the Court finds that Gur-Ravantab is neither an adequate representative of the proposed class nor even a member of it. His class cannot be certified. Accordingly, the Court **ORDERS** that the Motion for Class Certification, ECF No. 41, is **DENIED**.

Dated: October 5, 2023                                          TREVOR N. McFADDEN, U.S.D.J.