UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EMIR GUR-RAVANTAB**, *et al*., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **GEORGETOWN UNIVERSITY**, <br><br> Defendant. | Case No. 1:22-cv-01038 (TNM) |

## MEMORANDUM ORDER

Plaintiffs Emir Gur-Ravantab and Emily Lama, former students of Georgetown University, sued the University over its COVID policies. First Amend. Compl. (FAC) at 1, ECF No. 12. They challenged the University's decision to switch to online-only education in the Spring 2020 semester. *Id*. ¶¶ 37–40. But they did not do so alone. Instead, they brought a putative class action, claiming to represent all students who were enrolled at Georgetown at that time. *Id*. ¶ 61. The Court denied their first motion for class certification. *See Gur-Ravantab v. Georgetown Univ.*, 345 F.R.D. 1 (D.D.C. 2023). Now, they move to substitute new class representatives and seek "preliminary approval of a class action settlement." ECF No. 67. For the reasons below, the Court grants that motion.

## I.

COVID-19 took the world by storm in early 2020. *Gur-Ravantab*, 345 F.R.D. at 3. To manage the crisis, and to mitigate the risk students would spread the virus, Georgetown shifted its lessons to fully remote instruction. FAC ¶¶ 37–40. It did so just after Spring Break, *id*. ¶ 37, meaning that about half the semester was remote, *id*. ¶ 40.

Plaintiffs are former Georgetown students who claim they were stiffed.  They say they were promised in-person education during the Spring 2020 semester.  FAC ¶ 17.  But that's not what they got.  Instead, the University gave them remote education during the Spring 2020 semester.  *Id*. ¶ 38.  They claim that a remote education is worth less than an in-person one, *Gur-Ravantab*, 345 F.R.D. at 3, but that Georgetown never paid them the difference, FAC ¶ 41.  In essence, it took their money, but gave them less than they paid for.  They thus brought three contract claims on their own behalf as well as that of all others similarly situated.  *Id*. ¶¶ 70–131.

Plaintiffs moved once before to certify their class of undergraduate students; the Court denied them.  *See generally Gur-Ravantab*, 345 F.R.D. 1.  Now, the parties have chosen to settle.  Plaintiffs have therefore filed an omnibus motion doing several things.  Mem. of Law in Supp. of Mot. (Mot.), ECF No. 67-12.[1]  First, it seeks to substitute two new class representatives for the old.  *Id*. at 4–6, 23.  Second, it seeks what it calls preliminary approval of the proposed settlement.  *Id*. at 6–15.  Third, it seeks what it calls "provisional certification" of the putative settlement class.  *Id*. at 15–23.  Fourth, it seeks approval of a plan to notify absent class members of this lawsuit.  *Id*. at 23–24.  And last, it asks the Court to name Plaintiffs' counsel as class counsel.  *Id*. at 24–25.

## II.

First, the parties jointly seek to add two new named Plaintiffs, who will serve as class representatives in place of Gur-Ravantab.  Intervention is governed by Federal Rule of Civil

---

[1] The motion itself makes no mention of Emily Lama or the graduate student class she was originally held out as representing.  Presumably, Lama's individual claims remain live.  That said, the parties have barely mentioned her since Plaintiffs filed their Motion to Certify Class in June 2023.  She filed no motion to certify her own graduate student class, and the parties have taken no steps to litigate her individual claims since then.  And she is barely mentioned in the settlement agreement, save for having a service award earmarked for her.

Procedure 24.  Fed. R. Civ. P. 24.  In general, the Court "must" permit a party to intervene if he possesses "an interest relating to the property or transaction that is the subject of the action" and "disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest."  Fed. R. Civ. P. 24(a)(2).  Or the Court "may" permit intervention, if it so chooses, when a party "has a claim or defense that shares" "a common question of law or fact" "with the main action."  Fed. R. Civ. P. 24(b)(1)(B).

Next, the parties seek "preliminary approval of [the] class action settlement."  Mot. at 1.  The Federal Rules of Civil Procedure does not use this term.  Rather, before certifying a settlement class and approving a class settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  And to warrant such notice, the parties must "show[] that the court will likely be able to" (1) "approve the propos[ed settlement agreement] under Rule 23(e)(2)" and (2) "certify the class for purposes of" the settlement agreement.  *Id*.  That means confirming that the Court would "likely" conclude that the agreement is "fair, reasonable, and adequate" on its terms, Fed. R. Civ. P. 23(e)(2), and that the Court would "likely" agree that the proposed class meets the certification criteria in Rule 23(a) and (b).  This is *not* an approval of the settlement—instead, it is only an anticipatory judgment about what the Court is "likely" to do.  *Cf. United States v. Seefried*, --- F. Supp. 3d ---, 2024 WL 1299371, at *5 (D.D.C. 2024).

And the Court has a special duty in assessing proposed class settlements.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see also Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (describing district court's special "independent obligation" in this area).  A class settlement is not like an ordinary settlement.  Usually, a settlement between the parties settles things just between the parties.  In a

class action, however, the settlement settles matters between the Defendant and the entire class—even those members who are not present and may not know about the agreement.  So the usual permissive philosophy toward settlements, that they are up to the parties' discretion, does not apply in the class action context.  Otherwise, the risks for chicanery are too great.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("[W]e will not affirm if it appears that the district court did not evaluate the settlement sufficiently to account for the possibility that class representatives and their counsel have sacrificed the interests of absent class members for their own benefit.").  The Court therefore "bear[s] the important responsibility of protecting absent class members" in assessing the proposed settlement agreement.  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010).  The Federal Rules of Civil Procedure implement this rule through detailed requirements in Rule 23(e).  Fed. R. Civ. P. 23(e)(2).

### III.

### A.

The parties seek to substitute named Plaintiffs.  Specifically, they request that Rebekah Morrison and Sean Kazmi replace Emir Gur-Ravantab as the class representatives for the proposed undergraduate class.  Mot. at 23.   Defendant does not oppose this motion; indeed, it joins it.  So because the motion is unopposed and the Court has no special or heightened duty to examine it, *see* Fed. R. Civ. P. 24(a)(2), the Court grants the motion to the extent that it seeks substitution of Morrison and Kazmi for Gur-Ravantab.

### B.

Next, the Court considers whether the Rule 23(e)(1)(B) factors are met.  It looks to whether it "will likely be able to . . . approve the [settlement] proposal under Rule 23(e)(2)" and

"certify the class for purposes of judgment on the [settlement] proposal."  Fed. R. Civ. P. 23(e)(1)(B).  The Court will take these in reverse order.

**1.**

Starting with the likelihood of certification, the Court finds it likely that it will be able to certify this class for settlement purposes.  To start, the Court has already found that this proposed class satisfies the two class-specific Rule 23(a) requirements: numerosity and commonality.  *Gur-Ravantab*, 345 F.R.D. at 4–5.  The only deficiencies in the class that the Court noted related to the sufficiency of the named representative, Gur-Ravantab.  *Id*. at 5–7.  The question here thus becomes whether the two new class representatives are likely to satisfy the remaining representative-specific Rule 23(a) requirements, typicality and adequacy.  They likely will.

Recall what typicality requires.  The typicality inquiry asks whether "whoever seeks to represent the class" has "claims or defenses that are typical of the claims or defenses of the class."  *Gur-Ravantab*, 345 F.R.D. at 3 (cleaned up).  That is, the question is whether the class representative's claims are "so interrelated with those of the class that [he] is a good stand-in for the class members in their absence."  *Id*. (cleaned up).

As with Gur-Ravantab, Kazmi and Morrison meet this threshold.  Each was an enrolled student at Georgetown during the semester when Georgetown unexpectedly transitioned to remote online learning.  Kazmi Decl. ¶¶ 2, 18, ECF No. 59-2; Morrison Decl. ¶¶ 2, 18, ECF No. 59-3.  Thus, each has the same kind of breach-of-contract legal claims shared by the other members of the class.  Because Georgetown's educational contracts are uniform across students, every student who was enrolled that semester would be impacted in the same way by the decision to transition to remote learning, and so every student—including Kazmi and Morrison—"shares the legal claims of the other members" of the class.  *Gur-Ravantab*, 345

F.R.D. at 5.  Whatever "factual variations" may exist between the class members do not defeat typicality.  *Id*.

Now turn to adequacy.  The adequacy requirement ensures that the named class representatives can "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  It requires, at a minimum, that the class representatives not "have a conflict of interest that pits [them] against other class members" and that their attorneys "be competent enough to handle the tough demands of a class action."  *Gur-Ravantab*, 345 F.R.D. at 3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Again, Kazmi and Morrison meet this bar.  Nothing in the record so far indicates that either has a conflict of interest.  Unlike Gur-Ravantab, they do not appear to have a close familial relation to a Georgetown employee.  Nor is there any evidence that their interests are adverse to those of the other class members.  More, their attorneys have "considerable experience litigating class action lawsuits" and have seen a half dozen comparable cases through to completion. Tompkins Decl. ¶ 21, ECF No. 67-1.  In sum, the Court will likely be able to conclude that Kazmi and Morrison are adequate representatives for the proposed class.

Last, the class representatives here do not appear to skirt any of the other rules that tripped up Gur-Ravantab.  For instance, all evidence indicates that they are, in fact, "part of the class and possess the same interest and suffer the same injury as the class members."  *East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (cleaned up).  So the putative class, with Kazmi and Morrison at the helm, will likely satisfy the Rule 23(a) requirements.

But it must satisfy Rule 23(b), too.  It likely does.  This is a classic 23(b)(3) class action, in which "questions of law or fact common to class members predominate over any questions affecting only individual members" and the "class action is superior to other available methods

for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The reason for each of those is essentially the same.  *Every* class member has more or less the same factual and legal claims:  Georgetown used uniform contracts for all of them, went remote at the same time for each of them, and did not repay any of them.  So each member is necessarily a member of the injured class, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 254–55 (D.C. Cir. 2013), and each member's injury and legal claims are identical.  The only salient variations come in the measure of damages for each class member, which can be resolved at the recovery phase of the proceeding.  But that kind of variation does not defeat certification under Rule 23(b)(3). *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) ("[T]he necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate.").

### 2.

Now the Court turns to the last consideration, whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).  That is, if the Court is likely to find "that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To do so, the Court looks to the Rule 23(e)(2) factors.  Here too the Court's analysis is speculative.  It is about what the Court *will likely* be able to" do.  Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).  But "when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness'" to account for the Court's diminished ability to "effectively monitor for collusion." *Lane*, 696 F.3d at 819 (cleaned up).

The first factor is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  As noted earlier, all the evidence so far produced indicates that class counsel and the named Plaintiffs are adequate representatives of

this class.  Thus, at least at this stage of the proceeding, the Court views this factor as tipping

toward approval.  Second is a related question, whether "the proposal was negotiated at arm's

length."  Fed. R. Civ. P. 23(e)(2)(B).  This factor likewise militates for approval.  The parties

engaged in settlement negotiations, moderated by Suzanne Segal, a retired magistrate judge from

the Central District of California.  Tompkins Decl. ¶ 9; Ex. G, ECF No. 67-8.  The involvement

of a neutral mediator, coupled with the lack of evidence of collusion, indicates that the parties

likely did engage in arm's length negotiations in good faith.

Next are two factors going to the substantive fairness of the settlement.  First whether

"the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), and second whether

"the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D).

To determine the adequacy of the award, the Court must look at "the costs, risks, and delay of

trial and appeal," "the effectiveness of any proposed method of distributing relief to the class,"

"the terms of any proposed award of attorney's fees," and "any agreement made in connection

with the proposal."  Fed. R. Civ. P. 23(e)(2)(C), (e)(3).

Under these rules, the proposed settlement appears adequate.  The cost of litigation here

would likely be substantial, based on the length of pretrial proceedings so far and the need for

expert witnesses to valuate the class injuries.  And, of course, success at trial is hardly assured.

So the elimination of "costs, risks, and delay of trial and appeal" counts in favor of adequacy.

Fed. R. Civ. P. 23(e)(2)(C)(i).  So does the effectiveness of relief distribution.  The agreement

contains a detailed plan for notice to the class, Settlement Agreement ¶ 4, ECF No. 67-2,

followed by a clear plan for administration of the settlement fund itself, *id*. ¶¶ 2, 5.  That plan

appears reasonably efficient and cost-effective, so it justifies finding that this "method of

distributing relief to the class" is "effective[]."  Fed. R. Civ. P. 23(e)(2)(C)(ii).

More, attorney fees for class counsel are limited to one-third of the settlement award, at most.  Settlement Agreement ¶ 8.1.  Attorney fee awards that are one-third of the total recovery are generally considered reasonable.  *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 833–34 (7th Cir. 2018); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 994 (9th Cir. 2023).  And finally, the parties do not identify any side agreements.  Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  In sum, then, the Court concludes that the settlement is likely adequate under Rule 23(e)(2)(c).

But the Court flags two potential concerns that the parties should address going forward.  First, the proposed class may contain up to 7,300 members.  *Gur-Ravantab*, 345 F.R.D. at 3.  But the settlement agreement apportions only $1.5 million in total for them.  Settlement Agreement ¶ 2.1(a).  And up to $500,000 of that may go to class counsel.  *Id*. ¶ 8.1.  If the remaining $1 million were apportioned between *all* class members equally, each member's recovery would be limited to around $137.  At the Rule 23(e)(2) hearing, counsel should be prepared to discuss whether that is an adequate award for the class members in light of comparable class actions.

Second, the settlement agreement allocates a bounty to Lama as a "service award" as a class representative.  Settlement Agreement ¶ 8.3.  But Lama is not a part of the proposed settlement class.  *Id*. ¶ 1.29.  Nor has she moved to certify a class on her own.  Nor even are her individual claims disposed of through the settlement agreement.  *Id*. ¶¶ 1.23, 3.  But if Lama is not a member of the class, has not released her claims, and is not entitled to recover through the settlement fund, then it is unclear what the basis for her service award is.  At the Rule (23)(e)(2) hearing, counsel should be prepared to discuss the appropriateness of drawing on the class settlement fund to reward a non-member of the class.

The Court turns last to whether the agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  It does.  The agreement treats class members fairly: Each is given a share of the total class award, based on the proportion of the settlement fund that his pro rated tuition payment for the Spring 2020 semester makes up.  Settlement Agreement ¶ 2.1(b).  This, on its face, appears to be an equitable and reasonable basis for apportioning payments from the fund, and the Court therefore concludes that Rule 23(e)(2)(D) is satisfied, too.

In sum, then, the Court concludes that each of the Rule 23(e)(2) factors is likely satisfied. It therefore believes that it is "likely to be able to . . . approve the proposal under Rule 23(e)(2)," following notice to the class and a hearing on the settlement agreement.  Fed. R. Civ. P. 23(e)(1), (e)(2).  To be sure, as the Court noted earlier, this analysis is inherently speculative.  Upon notice to the class, objectors may come forward and put forward evidence that this class should not be certified, or this settlement should not be approved.  But, until then, the available evidence indicates that the Court is likely to be able to approve the proposed settlement agreement.

### C.

Now, Plaintiffs Morrison and Kazmi seek to be named class representatives and have their attorneys appointed as class counsel.  Because the Court is not, at this point, certifying the class, it construes Plaintiffs' motion as seeking interim appointment of class counsel under Rule 23(g)(3).  The Court grants both requests.

First, as to the class representatives, Morrison and Kazmi are appropriate representatives for the reasons outlined earlier in the Court's opinion.  *Supra* Part III.A.  Namely, they are adequate representatives of the class whose rights and injuries are typical of those of other class members.  *Id*.  And there does not appear to be any unique feature of this litigation that would preclude either of them from vigorously defending the class's interests.

Second, as to the interim appointment of class counsel, the Court agrees with the parties to appoint the attorneys from Leeds Brown Law, P.C. as interim class counsel.  First, those attorneys have already devoted significant work to "identifying or investigating potential claims in the action," as they have been litigating this suit for over two years now.  Fed. R. Civ. P. 23(g)(1)(A)(i).  Second, they are familiar with the handling both of class actions generally, and these claims in particular.  Fed. R. Civ. P. 23(g)(1)(A)(ii), (g)(1)(A)(iii).  They have identified several other class actions they have litigated raising identical or substantially identical claims in this and other districts.  *See* Mot. at 24–25.  So they are likely up to speed on "the applicable law" and have sufficient experience with complex aggregate litigation to manage this suit.  Fed. R. Civ. P. 23(g)(1)(A)(iii).  And last, the Court concludes that it is likely counsel will "commit" substantial "resources . . . to representing the class," particularly given their substantial investment of resources through this suit thus far.  Fed. R. Civ. P. 23(g)(1)(A)(iv).  Thus, the Court concludes that interim appointment is warranted under Rule 23(g)(3) and appoints Leeds Brown Law as interim class counsel.

### D.

Finally, Plaintiffs move for approval of their plan to give notice to the members of the putative class.  Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed]" settlement.  Fed. R. Civ. P. 23(e)(1)(B).  The parties have proposed a notice plan in their settlement agreement.  *See* Settlement Agreement ¶ 4.

That notice plan begins with Georgetown surrendering a list of Spring 2020 students to class counsel, along with those students' contact information.  Settlement Agreement ¶ 4.1(a).  It then involves class counsel reaching out to each such student through email and U.S. mail.  *Id*.

¶ 4.1(b), (c).  And class counsel will establish a settlement website and distribute notice of the settlement to the Attorney General of each state in which a putative class member resides.  *Id*. ¶ 4.1(d), (f).  This method of notice appears well-calculated to reach the vast majority of class members.  In particular, because Defendants have detailed records of every member of the putative class, this method of notice should ensure that at least a valid attempt of notice is made for every possible class member.

And the contents of the proposed notice appear reasonable, too.  As outlined in the settlement agreement, the class notice must advise putative class members of, among other things, their right to opt out of the settlement class or to object to the agreement's terms. Settlement Agreement ¶ 4.2.  More, the agreement contains detailed provisions governing the process for managing opt-outs and objections.  *E.g.*, *id*. ¶ 4.3.

In sum, then, the settlement agreement's proposed notice plan appears reasonable under the circumstances.  The Court therefore approves it, and orders class counsel to implement it. Fed. R. Civ. P. 23(e)(1)(B).

\*        \*        \*

For the reasons given above, the Court **ORDERS** that the Motion for Preliminary Approval of Class Action Settlement, ECF No. 67, is **GRANTED**.  Accordingly, the Motion to Intervene, ECF No. 59, is **DENIED AS MOOT**.

**SO ORDERED**.

Dated: July 16, 2024                                TREVOR N. McFADDEN, U.S.D.J.