UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EMIR GUR-RAVANTAB**, *et al.*,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

        v.

**GEORGETOWN UNIVERSITY**,

        Defendant.

Case No. 1:22-cv-01038 (TNM)

## MEMORANDUM ORDER

Plaintiffs sued Georgetown University, arguing the school's move to virtual instruction during the pandemic violated its implied contract with its students and led to unjust enrichment. Following successful settlement negotiations, Plaintiffs move to certify the proposed settlement class and obtain approval of the settlement agreement. The settlement class satisfies Rule 23(a) and (b). So the Court will certify the class. And the settlement agreement is fair, reasonable, and adequate. Thus the Court approves the settlement.

### I.

When the pandemic shifted Georgetown instruction online, Emir Gur-Ravantab and Emily Lama felt duped. *See* Amend. Compl., ECF No. 12, ¶¶ 37–41. They believed Georgetown had promised them—and that they had paid for—in-person instruction for the full Spring 2020 semester. *Id.* ¶¶ 17–20. So they started this purported class action against the University, alleging that the unanticipated shift to virtual learning breached their implied contract with the school. *Id.* ¶¶ 70–113. More, they claimed that Georgetown was unjustly enriched by

retaining tuition and fees while failing to provide the experience for which that money was collected.  *Id.* ¶¶ 114–131.

After extensive merits discovery, Gur-Ravantab moved for class certification.  First Mot. Certify Class, ECF No. 41.  The Court denied that motion, finding that Gur-Ravantab was not an adequate class representative.  *See Gur-Ravantab v. Georgetown Univ.*, 345 F.R.D. 1, 2 (D.D.C. 2023) (*Gur-Ravantab I*).  Then Rebekah Morrison and Sean Kazmi moved to intervene in the action to be substituted as Named Plaintiffs and class representatives.  Mot. Intervene, ECF No. 59.  While that motion was pending, the parties were able to independently reach a settlement agreement through mediation.  Joint Status Report, ECF No. 64.

Next, Morrison and Kazmi asked the Court to "grant preliminary approval of the settlement" and to "provisionally certify the [] proposed settlement class."  Mot. Prelim. Approval, ECF No. 67, at 1.  This request was to comply with Federal Rule of Civil Procedure 23(e)(1)(B), which mandates that a court give notice to all class members who would be bound by the proposed settlement if the court finds it is "likely" to approve the settlement and certify the class.  Morrison and Kazmi also requested that they be subbed in as class representatives.  Mot. Prelim. Approval at 4.

The Court granted Plaintiffs' requests, but with a few caveats.  Starting with whether it was likely to certify the class, the Court found that the Rule 23(a) requirements were probably satisfied.  *Gur-Ravantab v. Georgetown Univ.*, 2024 WL 3443481, at *4 (D.D.C. July 16, 2024) (*Gur-Ravantab II*).  And it concluded that the class was likely a "classic 23(b)(3) class action class action," as "[e]very class member has more or less the same factual and legal claims."  *Id.*

The Court also anticipated it would approve the proposed settlement, finding it foreseeable that the final agreement would be "fair, reasonable, and adequate."  *Id.* at *4 (quoting

Fed. R. Civ. Pro. 23(e)(2)).  But the Court "flagg[ed] two potential concerns" for the parties to address before the ink dried.  *Id.* at *5.  First, it queried whether the average recovery per class member was sufficient.  *Id.*  Second, it noted that "the settlement agreement allocate[d] a bounty to Lama as a 'service award' as a class representative."  *Id.*  This although Lama is not a part of the proposed settlement class, as she is a graduate student, and the proposed class includes only undergraduate students.  *Id.*  More, Lama had not "moved to certify a class on her own."  *Id.*  Thus the Court questioned the "basis for her service award."  *Id.*

Besides noting its likely approval of the class and settlement agreement, the Court granted Morrison and Kazmi's request to be named as class representatives.  *Id.* at *6.  And it named the attorneys from Leeds Brown Law, P.C., as interim class counsel.  *Id.*  Finally, the Court approved the settlement agreement's proposed notice plan to the members of the putative class.  *Id.* at *7.

The parties then filed their formal motion for settlement.  Mot. Settlement, ECF No. 71.  The Court held a fairness hearing in November 2024.  The Court is now ready to rule on that motion.

## II.

To approve the settlement, the Court must certify the proposed settlement class.  Like any class, a settlement class must satisfy the requirements of Rule 23(a) and be maintainable under one of the subdivisions of Rule 23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).  This means the proposed class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. Pro. 23(a)(1).  And that "questions of law or fact [are] common to the class."  *Id.* (a)(2).  Also that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  *Id.* (a)(3).  Plus that "the representative parties will fairly

and adequately protect the interests of the class." *Id.* (a)(4).  Additionally, a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  Finally, as relevant here, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b).

To approve a settlement under Rule 23(e), the Court must find that "the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998).  In scrutinizing proposed settlements, courts in this circuit typically consider several factors, including "whether the settlement is the result of arm's-length negotiations"; "the terms of the settlement in relation to the strength of the plaintiffs' case"; "the status of the litigation at the time of settlement"; "the reaction of the class" and "the opinion of experienced counsel." *Kinard v. E. Capitol Fam. Rental, L.P.*, 331 F.R.D. 206, 212 (D.D.C. 2019).  The Court must "provide[ ] a check against settlement dynamics that may lead the negotiating parties—even those with the best intentions—to give insufficient weight to the interests of at least some class members." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 30 (D.C. Cir. 2000) (cleaned up).

### III.

The Court will certify the class and approve the settlement.

Start with the first two class certification requirements—numerosity and commonality.  The Court has repeatedly confirmed that this class suffers no infirmities there.  *Gur-Ravantab I*, 345 F.R.D. at 4; *Gur-Ravantab II*, 2024 WL 3443481, at *3.  Nothing new has changed the

4

Court's conclusion.  The proposed class contains thousands of students, well beyond the rough baseline of forty that courts impose for the numerosity requirement.  *Gur-Ravantab I*, 345 F.R.D. at 4 ("No one seriously contends that numerosity is lacking here); *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) ("Absent unique circumstances, numerosity is satisfied when a proposed class has at least forty members.") (cleaned up).  And it remains true that "common contentions abound" here, as all of the class members are alleging a breach of the identical contracts they entered into with the University.  *Gur-Ravantab I*, 345 F.R.D. at 5.  Thus, commonality is satisfied.

More, the Court confirms what it previously held was probable:  Kazmi and Morrison are typical and adequate class representatives.  *Gur-Ravantab II*, 2024 WL 3443481, at *3–*4.  Typicality is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members," such that the "class representatives suffered injuries in the same general fashion as absent class members."  *Johnson v. District of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013).  Kazmi and Morrison were undergraduates at Georgetown in the spring of 2020.  First Decl. R. Morrison, ECF No. 59-3, ¶ 2; First Decl. S. Kazmi, ECF No. 59-2, ¶ 2.  So they were unexpectedly barred from on-campus instruction and facilities after the onset of the pandemic.  First Decl. R. Morrison ¶ 19; First Decl. S. Kazmi ¶ 19.  They accordingly allege a breach of the contract they had with the University.  First Decl. R. Morrison ¶ 28; First Decl. S. Kazmi ¶ 28.  This theory of liability mirrors that of the rest of the class, since Georgetown's contract is the same for all students.  *Gur-Ravantab II*, 2024 WL 3443481, at *3.  So Kazmi and Morrison are typical.

Now for adequacy. Under that requirement, "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). More, "the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Id.*

Adequacy poses no problem for Kazmi and Morrison. There is no evidence that their interests are hostile to that of the unnamed class members. On the contrary, Kazmi and Morrison have taken an active role to help make this case successful, participating in discovery and the settlement negotiations. *See* First Decl. R. Morrison ¶ 9; First Decl. S. Kazmi ¶ 9; Second Decl. R. Morrison, ECF No. 67-10; Second Decl. S. Kazmi, ECF No. 67-11. And unlike Gur-Ravantab, Kazmi and Morrison personally paid expenses to the University for the spring semester of 2020. *Compare Gur-Ravantab I*, 345 F.R.D. at 7 ("Gur-Ravantab did not spend any money on Spring 2020 charges for Georgetown.") *with* First Decl. R. Morrison ¶ 4 ("I did not receive any scholarships or grants and made payments of tuition and fees out of pocket.") *and* First Decl. S. Kazmi ¶ 8 ("I paid tuition and fees out of pocket."). Thus they have "the incentive to represent the claims of the class vigorously." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988). Nor has any conflict of interest surfaced for Morrison and Kazmi that would hamper their ability to adequately represent the class. *Cf. Gur-Ravantab I*, 345 F.R.D. at 5 ("Gur-Ravantab's mother is a Turkish language instructor at Georgetown."). More, Morrison and Kazmi's attorneys have "considerable experience litigating class action lawsuits," and have handled "several other similar . . . cases across the country." Decl. M. Tompkins, ECF No. 67-1, ¶¶ 21 & 24. So adequacy is covered.

And finally, Morrison and Kazmi are "part of the class and possess the same interest and suffer the same injury as the class members." *E. Tex. Motor Freight Sys. Inc.*, 431 U.S. at 403.

Again, they were "Georgetown University undergraduate students" who were "enrolled during the Spring 2020 Semester," paid tuition and fees from their "own funds," and "have not been refunded." Mot. Prelim. Approval at 1. Thus they are eligible to represent the settlement class. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Move, then, to the relevant Rule 23(b) requirements. Under that provision, a court should certify a class where common questions predominate over individual issues and a class action would be superior to other methods of fairly and efficiently adjudicating the controversy. Both elements are present here, for the same reasons. Each class member has a virtually identical injury and legal claim. They allege that their uniform contract with the University was breached when the school transitioned to remote educational instruction and closed on-campus services. And they all insist that they never got refunds to which they were entitled. These mirrored claims must be "subject to generalized proof." *Amchem Products*, 521 U.S. at 623. So the settlement class is "sufficiently cohesive" to compel joint litigation of their substantive claims, rather than bringing individual suits. *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 762 (D.C. Cir. 2023).

Thus the settlement class should be certified. That leaves the question of whether the settlement itself should be sanctioned. The Court previously noted that it was likely to approve the settlement under the factors listed in Rule 23(e)(2). *Gur-Ravantab II*, 2024 WL 3443481, at *4–*6. It stressed that class counsel and named Plaintiffs were "adequate representatives." *Id.* at *4. And it acknowledged that "[t]he involvement of a neutral mediator" in the settlement negotiations, "coupled with the lack of evidence of collusion, indicates that the parties likely did engage in arm's length negotiations in good faith." *Id.* More, the Court highlighted that there was an effective method of distributing relief to the class. *Id.* at *5. Further, the Court stressed

7

that the agreement treated class members fairly by granting them a share of the total award "based on the proportion of the settlement fund that his pro rated tuition payment for the Spring 2020 semester" comprises. *Id.* No new evidence has surfaced to alter these conclusions, and the Court reaffirms them now.

Even so, the Court had raised two concerns with the proposed settlement for the parties to address. *Id.* at *5. First, it noted that the settlement agreement only allotted $1.5 million dollars to a class of up to 7,300 students. *Id.* With roughly one-third of that going to class counsel, each member would only recover about $137 on average. *Id.* The Court instructed counsel to discuss whether that was an adequate award for the class members. *Id.*

At the November fairness hearing, and in its motion for final approval of the settlement, counsel addressed this concern. They estimated an average award of $141 for the 6,303 class members, with a median award of $180 and a maximum award of $227.[1] Mot. Settlement at 6. Such an award fits within the range of settlements found reasonable by courts in this jurisdiction. *See, e.g.*, *Rogers v. Lumina Solar, Inc.*, 2020 WL 3402360, at *9 (D.D.C. June 19, 2020) (approving settlement that provided class members "with a pro-rata share of the $248,800 settlement fund, of no more than $100" and collecting similar cases). And it also follows settlements that have been achieved in COVID-19 college refund cases across the country, including those facing lower litigation risk. *See, e.g.*, *Choi v. Brown Univ.*, No. 1:20-cv-00191, ECF Nos. 80 & 81 (D.R.I. 2023) (approving settlement with a rough payout of $100 per student); *Smith v. Univ. of Penn*, Case No. 20-cv-02086, ECF No. 112 ECF (E.D. Pa. 2023) (roughly $117 per student). Unlike those cases, this case would require Plaintiffs to overcome the previous denial of class certification and succeed on the unresolved intervention motion. More, Plaintiffs

---

[1] These estimations were made before the imposition of a $10 floor for all class members, but the Court still finds the per-member average sum adequate. *See* Mot. Settlement at 6 n.7.

8

would need to overcome an impossibility defense by Georgetown. Mot. Settlement at 2. Thus the Court is convinced that the per-student recovery is adequate in light of the risks of trial. *See* Rule 23(e)(3) (adequacy of relief considers "the costs, risks, and delay of trial and appeal.").

Second, the Court questioned the incentive award to Lama. Counsel has since justified this bounty, although it is a bit unusual. "[C]ourts regularly give incentive awards" in class action suits "to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Usually, these awards are offered to the class representatives. *See, e.g.*, *Cobell v. Salazar*, 679 F.3d 909, 922–23 (D.C. Cir. 2012) (holding district court did not err in finding that lead plaintiff's "singular, selfless, and tireless investment of time, energy, and personal funds to ensure survival of the litigation [merited] an incentive award").

But sometimes, incentive awards can be offered to non-class members, provided those non-class members also release their claims against the defendants. *See Chambers v. Whirlpool Co.*, 980 F.3d 645, 670 (9th Cir. 2020) (upholding settlement award to non-class members that "require[d] non-class members to execute a separate release as consideration for receiving settlement compensation."). This justifies the award to Lama, as well as the award to Gur-Ravantab. Under the settlement agreement, both Plaintiffs agreed to release their claims against Georgetown. Settlement Agreement, ECF No. 72-4, ¶¶ 1.24, 1.26, 1.34, 3.1, 3.2. And although neither individual ultimately represented the class, both contributed significant time and resources to ensuring settlement came to fruition. *See* Decl. E. Lama, ECF No. 72-9, ¶¶ 5–11; Decl. E. Gur-Ravantab, ECF No. 41-30, ¶¶ 14; Second Decl. M. Tompkins, ECF No. 71-2, ¶ 27. Thus these service awards are justified in this unique circumstance.

The Court likewise approves the incentive awards to class representatives Kazmi ($2,500) and Morrison ($2,500). Each named Plaintiff provided significant services to the class. *See* Second Decl. M. Tompkins ¶ 27. These awards are thus "reasonable in light of their investments of time, money, and effort on part of the class." *Collins v. Pension Benefit Guar. Corp.*, 1996 WL 335346, at *6 (D.D.C. June 7, 1996). And they are relatively modest compared to other service awards granted in this district. *See, e.g.*, *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003) (approving incentive awards of $20,000 per named plaintiff); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) ($10,000). Indeed, the total amount of the service awards granted comprises just roughly 0.4% of the total settlement amount. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) ("The aggregate incentive awards respectively represent approximately 0.3% of each class's recovery."). Such an award is eminently reasonable.

The final issue in the settlement is that of fees and costs. The requested attorney's fee award of $500,000 represents one-third of the sum of the common fund.[2] Mot. Fees, ECF No. 72, at 5. Such an award is reasonable considering the factors courts in this district have found pertinent, including the size of the fund and class; the lack of objections to the fee request; the skill and efficiency of class counsel; the complexity of the litigation; the risk of nonpayment; the resources devoted to the case by class counsel. *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 204 (D.D.C. 2011). More, it resembles awards in this district and in similar cases. *Id.*; *see, e.g.*, *In re Nifedipine Antitrust Litig.*, 2011 WL 13392312, at *2 (D.D.C. Jan. 21, 2011) (approving 33.3% award); *In re Columbia Univ. Tuition Refund Action*, No.20-cv-03208, ECF

---

[2] The Court uses the "percentage of the fund" method to determine the attorney's fee award because this is a case involving a common fund. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[A] percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

No. 98 & 115 (S.D.N.Y. 2022) (approving 33.3% award).  Indeed, "[a]ttorney fee awards that are one-third of the total recovery are generally considered reasonable." *Gur-Ravantab II*, 2024 WL 3443481, at *5.  Thus the Court approves the award of attorney's fees.

Now consider costs incurred by class counsel.  Courts in this district often award the reimbursement of attorney costs and expenses in addition to granting a percentage of the common fund for fees.  *Trombley*, 826 F. Supp. 2d at 208.  Class counsel seek reimbursement in the amount of $23,028.86.  Mot. Fees at 17.  No objections were raised to this request, and it appears reasonable.  The expenses reflect costs reasonably incurred in furnishing effective and competent representation, such as filing fees, travel costs, and mediation expenses.  Second Decl. M. Tompkins, ¶¶ 43–45.  The costs will be reimbursed.

Finally, the Court authorizes disbursement of $75,000 to the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc, to be paid in accordance with the Settlement Agreement, to compensate the Settlement Administrator for the tasks performed in connection with class notice and administration of the settlement.

**IV.**

In sum, the settlement class satisfies the strictures of Rule 23(a) and 23(b)(3).  And the settlement agreement is fair, reasonable, and adequate, as required by Rule 23(e)(2).  So the Court **ORDERS** that the Motion for Settlement, ECF No. 71, and the Motion for Fees, ECF No. 72, are **GRANTED.**

**SO ORDERED**.

Dated: March 11, 2025                                            TREVOR N. McFADDEN, U.S.D.J.